# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BENTLEY MCGOVERN,

Plaintiff,

v.

SHAWNO COUNTY, SHERIFF LENZEER, CHIEF DEPUTY RADANT, TROY BYER, CORY LADWIG, TIM MEIDL, PAUL STAMMERS, OFFICER WNEK, SGT TOURTILLOT, OFFICER SMITH, OFFICER HERNANDEZ, and BRENDA LYNN,

Defendants.

Case No. 26-CV-847-JPS

**ORDER**

Plaintiff Bentley McGovern, an inmate confined at Stanley Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF 1. This Order screens Plaintiff's complaint and resolves his motion for leave to proceed without prepaying the filing fee and motion to appoint counsel.

## 1. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing

fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On June 8, 2026, the Court ordered Plaintiff to pay an initial partial filing fee of $21.72. ECF No. 9. Plaintiff paid that fee on June 29, 2026. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff names Defendants Shawano County, Sheriff Lenzeer ("Lenzeer"), Chief Deputy Radant ("Radant"), Troy Byer ("Byer"), Cory Ladwig ("Ladwig"), Tim Meidl ("Meidl"), Paul Stammers ("Stammers"), Officer Wnek ("Wnek"), Sgt Tourtillot ("Tourtillot"), Officer Smith ("Smith"), Officer Hernandez ("Hernandez"), and Brenda Lynn ("Lynn"). ECF No. 1 at 1. During the relevant time period, Plaintiff was a pretrial detainee at the Shawano County Jail. *Id.* at 2. Plaintiff has been diagnosed with schizophrenia, bipolar disorder, and antisocial personality disorder. *Id.* Plaintiff experiences depression, anxiety, suicidal ideation, homicidal ideation, and auditory hallucinations. *Id.* SCJ knew about Plaintiff's conditions based on his intake screening. *Id.*

On March 12, 2024, Meidl served Plaintiff disciplinary paperwork. *Id.* Plaintiff told Meidl that he was suicidal and asked to be taken to observation. *Id.* Meidl responded that he did not care and walked away. *Id.* Plaintiff pressed the intercom button and told Stammers that he was

suicidal. *Id.* Stammers responded that he was aware and had told Meidl. *Id.* Plaintiff continued to press the intercom button for help for the next eighty-two minutes, but no one came to help. *Id.* Tourtillot was told directly but did not come to help. *Id.* Smith was "unavailable" because he was releasing another inmate. *Id.* Hernandez was "unavailable" because he was doing cell searches. *Id.* Wnek relayed Plaintiff's requests to Stammers and others but never called a supervisor or mental health staff. *Id.* Lynn walked through E-pod during this time on a routine round, but no one told her that Plaintiff was suicidal. *Id.* Lynn walked right past Plaintiff's cell during his active suicidal emergency and had no knowledge that Plaintiff needed help because the communication system completely failed. *Id.*

Plaintiff's psychiatric condition continued to get worse during this time period. *Id.* The voices in Plaintiff's head became overwhelming and he was consumed by hopelessness. *Id.* After about an hour with no help, Plaintiff tried to end his life by cutting his throat and left arm. *Id.* at 3. Another inmate called for help on the intercom and only at that point did officers come to address the situation. *Id.* Stammers and Hernandez treated Plaintiff's wounds, and he was placed in a suicide prevention gown and in cell R1. *Id.* Plaintiff suffered deep lacerations to his left arm and lacerations on his throat and neck. *Id.* Plaintiff also suffers from ongoing numbness and burning in his left arm. *Id.* Plaintiff also continues to suffer from ongoing psychological injuries as a result of this incident. *Id.*

### 2.3 Analysis

Because Plaintiff was a pretrial detainee at the time of the allegations, his failure to protect claim arises under the Due Process Clause of the Fourteenth Amendment. *See Kemp v. Fulton County*, 27 F.4th 491, 495–97 (7th Cir. 2022). Unlike an Eighth Amendment claim, a pretrial detainee claim is

governed by an objective standard. Under that standard, as recently clarified by the Seventh Circuit in *Pittman v. Madison County*, 108 F.4th 561, 566 (7th Cir. 2024), once a pretrial detainee proves that the defendant officer's failure to act was purposeful and intentional, the sole question is an objective one: did the defendant "take reasonable available measures to abate the risk of serious harm?" *Id.* at 572. As the court emphasized, "[t]he objective reasonableness of a decision to deny medical care . . . does not consider the defendant's subjective views about risk of harm and necessity of treatment. Instead, the proper inquiry turns on whether a reasonable officer in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care." *Id.* at 570.

Here, Plaintiff alleges that Meidl, Stammers, Wnek, Tourtillot, Smith, Hernandez, and Lynn were aware that he was suicidal and failed to appropriately act to protect him. Plaintiff further alleges that after these defendants of Plaintiff's situation, Plaintiff engaged in self-harm that resulted in injuries requiring emergency medical treatment. At this early stage, the Court will allow Plaintiff to proceed on a Fourteenth Amendment claim against Meidl, Stammers, Wnek, Tourtillot, Smith, Hernandez, and Lynn,[1] for their failure to protect him from self-harm.

The Court does not find, however, that Plaintiff states a claim against Lenzeer or Radant. Section 1983 does not allow actions against persons merely because of their supervisory roles. *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010). Only a defendant who is personally responsible for

---

[1] The Court notes that the allegations against Lynn appear to sound in negligence since she apparently did not know about Plaintiff's requests for help. However, further development of the record may be needed to determine what she did or did not know at the time. The Court will therefore allow this claim to proceed against Lynn at the early screening stage.

depriving the plaintiff of a constitutional right may be held liable under § 1983. *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). Plaintiff's allegations do not suggest that Lenzeer or Radant were personally involved in failing to protect him. As such, the Court will dismiss Lenzeer and Radant for the failure to state a claim against them.

Second, the Court will also allow Plaintiff to proceed against Meidl, Stammers, Wnek, Tourtillot, Smith, Hernandez, and Lynn on a state law claim for negligence. At this early stage, the Court will exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a). To sustain a claim for negligence, Plaintiff must allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). As such, the Court will allow Plaintiff to proceed on a state law claim against Meidl, Stammers, Wnek, Tourtillot, Smith, Hernandez, and Lynn for negligence.

Third, the Court finds that Plaintiff may proceed on a *Monell* claim against Defendant Shawano County. Section 1983 grants a private right of action against a "person" who acts under color of state law to deprive another of rights under federal law, including the Constitution. A key part of § 1983's doctrinal structure is the difference between individual and governmental liability. In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the United States Supreme Court found that a plaintiff may proceed against a municipal government so long as a constitutional violation was caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. 436 U.S. at 690–91; *Glisson v. Ind. Dep't of Correction*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc).

Here, Plaintiff alleges that Shawano County's customs and practices caused the harm of the unconstitutional actions by jail staff. Plaintiff alleges inadequate staffing, broken communication, inadequate suicide training, and a custom of dismissing mental health emergencies. At the pleading stage, the Court finds Plaintiff's allegations are sufficient to proceed against Shawano County for a *Monell* claim.

Finally, the Court finds that Plaintiff fails to state an access to courts claim against Ladwig and Byer. The Constitution guarantees prisoners a right of access to the courts. *Lewis v. Casey,* 518 U.S. 343, 350–51 (1996). But because that right is to access the *courts* rather than legal materials or law libraries, an inmate will not have a valid claim unless the authorities' conduct prejudiced a potentially meritorious challenge to his conviction, sentence, or conditions of confinement. *Ortiz v. Downey,* 561 F.3d 664, 671 (7th Cir. 2009); *Bridges v. Gilbert,* 557 F.3d 541, 553 (7th Cir. 2009); *Marshall v. Knight,* 445 F.3d 965, 968 (7th Cir. 2006).

The point of recognizing an access to the courts claim "is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury,* 536 U.S. 403, 414–15 (2002). The constitutional right of access to court "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415; *see also Lewis,* 518 U.S. at 353 (plaintiff must identify a "nonfrivolous," "arguable" underlying claim). Accordingly, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Harbury,* 536 U.S. at 415.

Here, Plaintiff's complaint does not meet the basic requirements for an access to courts claim. Although Plaintiff generally references that

Ladwig denied him copies of the incident reports and that Byer discouraged him from seeking accountability, the complaint does not provide any information about how Defendants' actions actually prejudiced a potentially meritorious claim. As such, Plaintiff may not proceed on an access to courts claim and it will dismiss Ladwig and Byer for the failure to state a claim against them. The Court notes that Plaintiff will have the opportunity to conduct discovery in this case and to request relevant documents to his case that Defendants possess.

**3. MOTION APPOINT COUNSEL**

The Court will deny Plaintiff's motion to appoint counsel without prejudice. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure

that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Here, Plaintiff provides evidence showing that he contacted attorneys to represent him in this matter. ECF No. 4-1. The Court finds that Plaintiff satisfies the first *Pruitt* question.

Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that

> normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this

is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a

court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that he cannot litigate or try this matter competently on his own. Plaintiff indicates that he requires counsel because he has no legal experience, has limited access to the law library, and suffers from mental health issues. ECF No. 4.

It is true, as Plaintiff intuits, that a lawyer would be helpful in navigating the legal system; trained attorneys are of course better positioned to successfully litigate cases. But Plaintiff's lack of legal training brings him in line with practically every other prisoner or former prisoner litigating in this Court. Plaintiff has clearly presented his claims to the Court and does not provide any detail as to why this case exceeds his abilities. Further, the Court will assist Plaintiff in this regard (as it does with all prisoner litigants) by providing copies of the most pertinent federal and local procedural rules along with its scheduling order. Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel. Plaintiff has not demonstrated that his case is exceptional to require counsel. As such, the Court is obliged to deny Plaintiff's motion for counsel without prejudice at this time.

## 4. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Fourteenth Amendment claim against Defendants Meidl, Stammers, Wnek, Tourtillot, Smith, Hernandez, and Lynn for their failure to protect Plaintiff from self-harm.

**Claim Two:** State law negligence claim against Meidl, Stammers, Wnek, Tourtillot, Smith, Hernandez, and Lynn for their failure to protect Plaintiff from self-harm.

**Claim Three**: *Monell* claim against Shawano County.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 4, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Defendants Lenzeer, Radant, Byer, and Ladwig, be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint and this order upon Defendants **Meidl, Stammers, Wnek, Tourtillot, Smith, Hernandez, Lynn, and Shawano County** pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or

attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

**IT IS FURTHER ORDERED** that Defendants **Meidl, Stammers, Wnek, Tourtillot, Smith, Hernandez, Lynn, and Shawano County** shall file a responsive pleading to the complaint;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $328.28 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing

an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 14th day of October, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.